## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BOUCHARD TRANSPORTATION COMPANY, INC., et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 16-11264** |
| **VT HALTER MARINE, INC., et al.** | **SECTION: "G" (2)** |

## <u>ORDER</u>

In this litigation, Plaintiffs Bouchard Transportation Co., Inc., M/V Donna J. Bouchard Corp., B. No. 272 Corp., M/V Kim M. Bouchard Corp., and B. No. 270 Corp. ("Plaintiffs") allege that Defendant VT Halter Marine, Inc. ("Defendant VT Halter") breached a contract requiring Defendant VT Halter to build a tugboat and barge for Plaintiffs when it installed "re-conditioned and malfunctioning valves," instead of new valves, onboard two vessels.[1]  Plaintiffs further allege that Defendant VT Halter purchased the faulty valves from Defendants Cajun Process Solutions, LLC and Flowline Valve and Controls, LLC.[2]  Pending before the Court is Defendant VT Halter's "Motion to Compel Arbitration"[3]  and Plaintiffs' "Motion to Stay Arbitration."[4]  Having reviewed the motion, the memoranda in support and in opposition, the record, oral argument, and the applicable law, the Court will grant Defendant VT Halter's "Motion to Compel Arbitration" and deny Plaintiffs' "Motion to Stay Arbitration" as moot.

---

[1] Rec. Doc. 33 at 3.

[2] *Id.*

[3] Rec. Doc. 24.

[4] Rec. Doc. 67.

1

# I. Background

## A.    Factual Background

In their complaint, Plaintiffs allege that they entered into a contract with Defendant VT Halter on February 13, 2013, requiring Defendant VT Halter to build two tug and barge units in exchange for monetary compensation.[5] Plaintiffs allege that Defendant VT Halter breached the contract by installing reconditioned and faulty valves on each barge even though the contract required that new valves be installed in the barges.[6] In June of 2016, Plaintiffs allege, they experienced problems on both barges caused by the faulty valves.[7]  As soon as the problems began, Plaintiffs notified Defendant VT Halter and gave it an opportunity to repair the problem, but according to Plaintiffs, it failed to do so.[8]  Plaintiffs assert that as a result of the defective conditions caused by the faulty valves, both barges have been rendered unsuitable for their intended use, and Plaintiffs claim over $20 million in damages.[9]

## B.    Procedural Background

Plaintiffs filed a complaint in this matter on June 22, 2016.[10] On July 6, 2016, the Court granted Plaintiffs leave to amend their complaint to expressly state the citizenship of Defendant VT Halter.[11] On July 19, 2016, Plaintiffs submitted a motion to Magistrate Judge Joseph C.

---

[5] Rec. Doc. 33 at 3.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 4.

[9] *Id.*

[10] Rec. Doc. 1.

[11] Rec. Doc. 8.

Wilkinson for leave to file a third amended and supplemental complaint for declaratory relief and damages,[12] which Judge Wilkinson granted on August 3, 2016.[13] On July 26, 2016, Defendant VT Halter filed the instant motion to compel arbitration.[14] On August 8, 2016, Plaintiffs filed an opposition to the motion to compel arbitration.[15] With leave of the Court, Defendant VT Halter filed a reply.[16] On October 14, 2016, Plaintiffs filed a motion to stay arbitration, a request for oral argument, and a motion for expedited consideration of the motion to stay arbitration.[17] The Court granted Plaintiffs' motion for expedited consideration and heard oral arguments on October 19, 2016.[18]

## II. Parties' Arguments

A.   *Defendant VT Halter's Motion to Compel Arbitration*

### 1. Defendant's Arguments in Support of the Motion to Compel

In its motion to compel arbitration,[19] Defendant VT Halter argues that Plaintiffs' claims are "plainly subject to the arbitration provision" in the contract that the parties executed on February 13, 2013.[20] Consequently, Defendant VT Halter argues, Plaintiffs' complaint should be

---

[12] Rec. Doc. 19.

[13] Rec. Doc. 32.

[14] Rec. Doc. 24.

[15] Rec. Doc. 39.

[16] Rec. Doc. 45.

[17] Rec. Docs. 67, 68, 69.

[18] Rec. Doc. 70.

[19] Rec. Doc. 24.

[20] Rec. Doc. 24-1 at 2.

dismissed and its claims against Defendant VT Halter must be resolved by arbitration.[21]  Defendant VT Halter asserts that the parties expressly agreed that disputes among the parties are to be resolved either through negotiations among executive level personnel (for non-technical disputes) or by a jointly appointed "ABS surveyor."[22] If any dispute cannot be resolved through either of the foregoing manners, Defendant VT Halter argues, "then they **shall** be resolved through arbitration."[23] Defendant VT Halter asserts that the broad language of the contract created a binding obligation to utilize arbitration, rather than the court system, for determining contractual disputes.[24]

Defendant VT Halter asserts that determination of a motion to compel arbitration depends on two conditions: 1) whether there is a valid agreement between the parties and 2) whether the dispute in question falls within the scope of that agreement.[25] Defendant VT Halter argues that even technical disputes fall within the broad scope of the valid agreement between the parties.[26] Defendant VT Halter rejects Plaintiffs' argument that the agreement does not apply to technical disputes and argues that Plaintiffs should have, but never did seek a resolution of the technical dispute by submitting it to an ABS surveyor.[27] Even if an ABS surveyor was not available, Defendant VT Halter argues, the language in the contract expressly provides that in the event a

---

[21] *Id.* at 5.

[22] *Id.* Although neither party explains this acronym, it appears they are referring to an American Bureau of Shipping surveyor.

[23] *Id.* (emphasis in original).

[24]*Id.* at 6.

[25] *Id.* (citing *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069 (5th Cir. 2002)).

[26] *Id.* at 7.

[27] *Id.*

4

surveyor is unable to resolve a technical dispute, the parties shall submit the dispute to binding arbitration.[28] Even if the dispute was "arguably arbitrable," Defendant VT Halter argues, it must be referred to arbitration.[29]

Next, Defendant VT Halter asserts that the parties expressly incorporated the Commercial Arbitration Rules of the American Arbitration Association ("AAA") into their arbitration agreement and have agreed to arbitrate, not litigate, arbitrability.[30] Defendant VT Halter asserts that Rule 7(a) of the AAA Rules expressly states that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[31] According to Defendant VT Halter, the Fifth Circuit and Second Circuit (applying New York law, the governing law of the contract), as well as several other circuits, have held that the express adoption of the AAA rules presents clear evidence that the parties agreed to arbitrate the issue of arbitrability if disputed.[32] Accordingly, Defendant VT Halter argues, it is for the arbitration panel, not the Court, to determine whether the disputes at issue are, in fact, arbitrable.[33] Defendant VT Halter argues that Plaintiffs, as the parties resisting arbitration, have the burden of proving the disputes are not arbitrable, which they have failed to do.[34]

---

[28] *Id.*

[29] *Id.* (citing *Waverly Mineral Products Co. v. United Steelworkers of America, AFL-CIO, Local No. 8209*, 633 F.2d 682, 684 (5th Cir. 1980)).

[30] *Id.* at 8.

[31] *Id.*

[32] *Id.* (*see, e.g., Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005)).

[33] *Id.*

[34] *Id.* at 8–9 (citing *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 539 (5th Cir. 2003)).

Finally, Defendant VT Halter argues in the alternative that the Court should stay Plaintiffs' claims in favor of arbitration in accordance with the contract and Section 3 of the Federal Arbitration Act ("FAA").[35] Defendant VT Halter argues that Section 3 of the FAA provides for a stay of legal proceedings whenever the issues in a case are within the scope of an arbitration agreement and that this provision is mandatory.[36] According to Defendant VT Halter, where there is a written agreement to arbitrate and the issues raised are within reach of that agreement, the Court has no discretion under Section 3 of the FAA to deny the stay.[37] Thus, because Plaintiffs' claims fall within the scope of the agreement, Defendant VT Halter argues, that the Court has no discretion to deny the stay and must grant Defendant VT Halter's request to stay all claims pending arbitration or dismiss Plaintiffs' claims.[38]

### 2. Plaintiffs' Arguments in Opposition to the Motion to Compel

In their opposition to Defendant VT Halter's motion to compel arbitration, Plaintiffs argue that the Court is the proper body to determine whether the parties agreed to arbitrate a particular grievance.[39] Plaintiffs further argue that the "intent of the arbitration provision" in the contract did not apply to claims like theirs "unless the condition precedent of the joint appointment of an ABS surveyor by both parties was met."[40] Because the parties did not appoint an ABS surveyor, Plaintiffs argue, the arbitration provision does not apply and the Court should deny Defendant VT

---

[35] *Id.* at 9 (citing 9 U.S.C.A. § 3).

[36] *Id.* (citing *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)).

[37] *Id.* (citing *Hornbeck Offshore*, 981 3.Fd at 754).

[38] *Id.* at 9–10.

[39] Rec. Doc. 39 at 2 (citing *Oil, Chemical and Atomic Workers' Intern. Union, Local 4-4447 v. Chevron Chemical Co.*, 815 F.2d 338, 340 (5th Cir. 1987)).

[40] *Id.*

Halter's motion to compel arbitration, issue an order staying arbitration proceedings, and proceed with hearing the parties' claims.[41]

Plaintiffs next argue that New York law governs the contract and that New York law holds that questions of arbitrability are for the judiciary to decide, not an arbitrator.[42] Plaintiffs further urge that the instant dispute is a technical dispute and is, therefore, not subject to arbitration under the plain language of the contract.[43] Because, Plaintiffs argue, the two condition precedents outlined in the contract (appointment of a ABS surveyor and inability of the surveyor to resolve the technical dispute) were not satisfied, the instant technical dispute is outside the scope of the arbitration agreement.[44] Plaintiffs argue that New York law mandates a judicial determination of whether this dispute falls outside the scope of the arbitration agreement, because the "threshold determination of whether a condition precedent to arbitration exists and whether it has been complied with is for the court to determine."[45] Plaintiffs argue that because neither Plaintiffs nor Defendant VT Halter appointed an ABS surveyor within the five day time period required in the contract, a condition precedent to arbitration was not met, and the contract is clear that the parties did not intend to go to arbitration failing this condition precedent.[46]

Next, Plaintiffs contest Defendant VT Halter's argument that the parties must arbitrate

---

[41] *Id.*

[42] *Id.* at 7 (citing *Smith Barney Shearson, Inc. v. Sacharow*, 689 N.E.2d 884 (N.Y. 1997); *Nationwide Gen. Ins. Co. v. Inv'rs Ins. Co.*, 332 N.E.2d 333 (N.Y. 1975); *Legislature of Cty. Of Rensselaer v. Allen*, 353 N.Y.S.2d 554 (App. Div. 1974)).

[43] *Id.* at 8.

[44] *Id.*

[45] *Id.* (quoting *Incorporated Village of Floral Park v. Floral Park Police Benevolent Ass'n*, 17 N.Y.S.3d 463, 466 (App. Div. 2015)).

[46] *Id.* at 12.

because they incorporated the American Arbitration Association ("AAA") rules into the contract.[47] Because the condition precedent to submitting the technical dispute to arbitration did not occur, Plaintiffs argue, the "triggering event for the matter to be submitted to arbitration under the AAA rules" has not occurred.[48] As a result, Plaintiffs contend, Rule 7(a) of the AAA granting the arbitrator the power to determine his or her own jurisdiction does not apply.[49] Even if the AAA rules were in effect, Plaintiffs argue, the AAA rules allow parties to create modified rules by written agreement, and here, Plaintiffs argue that the parties did just that when they agreed in writing to arbitrate only non-technical disputes or disputes unable to be resolved by a ABS survey appointed within five days of a dispute.[50] Plaintiffs also argue that the FAA does not mandate a stay of Plaintiffs' claims against Defendant VT Halter, because Plaintiffs' claims do not fall within the scope of the arbitration agreement.[51] Plaintiffs contend that in ruling on a motion to stay, the Court must first determine whether there is a written agreement to arbitrate and whether any of the issues raised are within reach of that agreement.[52]

Finally, Plaintiffs argue that the arbitration proceedings instituted by Defendant VT Halter should be stayed pending the Court's determination of arbitrability.[53] Plaintiffs argue that the instant case is similar to a New York case in which a New York appellate court stayed arbitration

---

[47] *Id.*

[48] *Id.* at 13.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 13–14.

[52] *Id.* (citing *Cargill Ferrous Intern. V. M/V Anatoli*, 935 F.Supp. 833, 837 (E.D. La. 1996) (citing *Hornbeck Offshore*, 981 F.2d at 754)).

[53] *Id.* at 14.

proceedings that had been prematurely instituted when a condition precedent had not been met.[54] Moreover, Plaintiffs contend that a second reason for staying the arbitration proceedings is that Defendant VT Halter has instituted a separate proceeding against Defendants Cajun Process and Flowline in this Court.[55] In light of the pending claims against non-signatory Defendants Cajun Process and Flowline, Plaintiffs argue, the Court should retain jurisdiction over all of the claims or alternatively, stay the arbitration proceedings until the non-arbitrable claims against the non-signatories are decided by the Court.[56]

### 3. Defendant VT Halter's Reply in Support of the Motion to Compel

In its reply, Defendant VT Halter argues that incorporation of the AAA rules into the contract serves as clear evidence of the parties' intent to submit questions of arbitrability to arbitration.[57] Defendant VT Halter further argues that Plaintiffs confuse the question of which body gets to decide questions of arbitrability with the question of arbitrability itself.[58] Defendant VT Halter contests Plaintiffs' assertion that questions of arbitrability are for the judiciary to decide, because, Defendant VT Halter argues, the New York case Plaintiffs rely on for that assertion recognizes that an exception to that rule exists where the parties "clearly and unmistakably" agree to arbitrate the issue of arbitrability.[59]

Defendant VT Halter likewise disagrees with Plaintiffs' assertion that the technical dispute

---

[54] *Id.* (citing *N.Y. Tel.Co. v. Schumacher & Forelle, Inc.*, 400 N.Y.S.2d 332 (App. Div. 1977)).

[55] *Id.* at 15. *See VT Halter Marine, Inc. v. A&C Machine, Inc. et al.* (16-12823).

[56] *Id.*

[57] Rec. Doc. 45 at 3.

[58] *Id.* at 4.

[59] *Id.* (citing *Smith Barney Shearson, Inc.*, 91 N.Y.2d at 39).

at issue cannot be submitted to arbitration because there was no timely appointment of an ABS surveyor. The failure to appoint an ABS surveyor, Defendant VT Halter argues, constitutes a procedural condition precedent.[60] Once a court determines that the parties are obligated to submit the subject matter of a dispute to arbitration, Defendant VT Halter argues, "procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."[61] Here, Defendant VT Halter argues, there is no dispute that the agreement provides that technical disputes shall be submitted to arbitration if it cannot be resolved by an ABS surveyor, and the fact that there was no timely appointment of an ABS surveyor does not mean that the parties' dispute goes to litigation. Rather, the issue of timeliness should be addressed by the arbitration panel.[62]

Next, Defendant VT Halter argues that Plaintiffs evidently refused to seek ABS surveyor resolution of the instant dispute, but this does not mean that the dispute proceeds to litigation rather than arbitration.[63] Defendant VT Halter argues that it requested that Plaintiffs comply with the procedural requirement for submission of the dispute to an ABS surveyor as soon as Plaintiffs alerted Defendant VT Halter that the damage alleged qualified as a technical dispute, but, Defendant VT Halter alleges, Plaintiffs refused to do so.[64] There is no time limitation on the parties' agreement, Defendant VT Halter argues, and the fact that five days have passed since the dispute arose does not bar the resolution of the claim by an ABS surveyor per the parties'

---

[60] *Id.*

[61] *Id.* at 5 (quoting *Chevron Chemical Co.*, 815 F.2d at 340 (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964)).

[62] *Id.* at 6.

[63] *Id.*

[64] *Id.* at 8.

agreement.[65] The Court should grant the motion to compel arbitration, Defendant VT Halter argues, as Plaintiffs should not be able to benefit from its own breach of the contract by refusing to enlist an ABS surveyor to resolve the dispute.[66] Finally, Defendant VT Halter argues that even if the Court finds that the parties' technical dispute is not subject to arbitration, the Arbitration Panel nevertheless has "exclusive jurisdiction" over the parties' non-technical claims.[67] Thus, even if the Court declines to compel Plaintiffs to arbitrate the technical dispute until after it has been submitted to an ABS surveyor for resolution, Defendant VT Halter argues, the Court should still "rigorously enforce" the parties' mutual agreement to resolve all other claims through the pending arbitration proceeding.[68]

### 4. Plaintiffs' Supplemental Brief in Opposition to the Motion to Compel

In their supplemental brief in opposition to the motion to compel,[69] Plaintiffs alert the Court that the parties have agreed to fully stay the arbitration proceeding instituted by Defendant VT Halter pending the Court's determination on the motion to compel arbitration and attached email correspondence that they argue demonstrate that the agreement to stay arbitration occurred.[70]

### 5. Defendant VT Halter's Supplemental Brief in Support of the Motion to Compel

In its supplemental brief, Defendant VT Halter asserts that the arbitration proceeding is not "fully stayed," but rather that the process for selecting and empaneling the arbitration panel is

---

[65] *Id.*

[66] *Id.* at 9.

[67] *Id.* at 10.

[68] *Id.*

[69] Rec. Doc. 51.

[70] Rec. Doc. 51-1.

currently ongoing.[71] Defendant VT Halter further clarifies that it has only brought claims against Plaintiffs in the arbitration proceeding, not in this Court.[72] Additionally, Defendant VT Halter restated its objection to Plaintiffs' request for a stay, because, according to Defendant, Plaintiffs had not properly filed a motion for a stay as of August 24, 2016, but had only urged the Court to grant a stay in its opposition to Defendant VT Halter's motion to compel arbitration.[73] Finally, Defendant VT Halter argues that the dispute at issue is not a technical dispute, but rather a contractual dispute between the parties subject to arbitration.[74]

**B.**   ***Plaintiffs' Motion to Stay Arbitration***

**1. Plaintiffs' Arguments in Support of the Motion to Stay Arbitration**

In their motion,[75] Plaintiffs state that Defendant VT Halter has instituted a separate American Arbitration Association (AAA) arbitration proceeding against Plaintiffs instead of bringing a counterclaim in this proceeding.[76] Plaintiffs argue that they have requested a declaratory judgment from the Court recognizing that the instant contractual dispute does not fall within the scope of the limited arbitration provision contained in the applicable contract and that this Court is the proper body to determine whether the parties agreed to arbitrate—not the AAA.[77] Plaintiffs assert that after Defendant VT Halter filed a motion to compel arbitration, counsel for

---

[71] Rec. Doc. 53 at 1–2.

[72] *Id.* at 2.

[73] *Id.*

[74] *Id.* at 3.

[75] Rec. Doc. 67.

[76] Rec. Doc. 67-1 at 2.

[77] *Id.* at 3.

12

Plaintiffs and Defendant VT Halter came to an agreement that the arbitration proceeding instituted by Defendant VT Halter would be stayed until the Court ruled on Defendant VT Halter's motion to compel.[78] Now, according to Plaintiffs, "in violation of this agreement to stay the arbitration proceeding, and . . . in violation of applicable jurisprudence," Defendant VT Halter is attempting to move forward with the arbitration proceeding.[79] Plaintiffs argue that the Court should stay arbitration to prevent "irreparable harm" to Plaintiffs and because it "would not make practical sense to begin arbitration now."[80]

Plaintiffs argue that in their previous briefing they cited binding case law that "squarely establishes" that the Court must first determine if the arbitration provision at issue applies to the claims brought by the parties before they are required to arbitrate.[81] Plaintiffs further argue that the arbitration provision in the contract at issue explicitly carves out an exception for "technical disputes" like the instant dispute.[82] Because certain condition precedents have not been met, Plaintiffs argue, the arbitration provision does not apply.[83]

Next, Plaintiffs argue that Defendant VT Halter would not be harmed by a stay of the arbitration, because it has not paid or reimbursed Plaintiffs for any damages. On the other hand, Plaintiffs argue, they will be irreparably harmed if the arbitration proceeding is allowed to go

---

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.* at 4 (citing Rec. Docs. 22, 39).

[82] *Id.*

[83] *Id.* (citing Rec. Docs. 22, 39).

forward.[84] Plaintiffs assert that the parties agreed to stay the arbitration proceeding during the pendency of Defendant VT Halter's motion to compel arbitration.[85] Despite Defendant VT Halter's suggestion that the agreement states that arbitration would go forward if the Court did not rule on its motion by mid-October, Plaintiffs argue that a plain reading of the parties' agreement shows that "no agreement to arbitrate was ever contemplated should the Court fail to rule by mid-October."[86]

Plaintiffs assert that New York law governs disputes of the contract at issue and that New York jurisprudence mandates that a stay or injunction of arbitration be issued while the Court determines whether the parties' claims are arbitrable.[87] In *Halley Optical Corp. v. Jagar Intern. Marketing Corp.*, Plaintiffs argue, the Southern District of New York set forth the general rule stating that the proper procedure for a party to challenge whether it is subject to an arbitration agreement is to move the district court for a stay of arbitration.[88] Plaintiffs further note that the Eighth Circuit,[89] the Fifth Circuit,[90] and district courts within the Fifth Circuit[91] have also recognized the power of a district court to issue a stay pending the court's determination of whether

---

[84] *Id.*

[85] *Id.* at 5.

[86] *Id.*

[87] *Id.*

[88] *Id.* (citing 752 F.Supp. 638, 639 (S.D.N.Y. 1990)).

[89] *Id.* at 6 (citing *McLaughlin Gormley King co. v. Terminix Intern. Co., L.P.*, 105 F.3d 1192 (8th Cir. 2014); *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994)).

[90] *Id.* at 7 (citing *Tai Ping Ins. Co., Ltd. V. M/V Warschau*, 731 F.2d 1141, 1144 (5th Cir. 1984)).

[91] *Id.* at 6 (citing *Koman v. Weingarten/Investments, Inc.*, No. H-10-1836, 2010 WL 3717312, at *1 (S.D. Tex. Sept. 17, 2010); *Garner v. MBNA America Bank, N.A.*, No. 3:05CV1029-R, 2006 WL 2354939, at *1 (N.D. Tex. Aug. 14, 2006); *Higman Marine Services, Inc. v BP Amoco Chemical Co.*, 114 F. Supp. 2d 693, 600 (S.D. Tex. 2000)).

a particular dispute is subject to arbitration.

Alternatively, Plaintiffs argue, the Court should enter a preliminary injunction until the Court makes a determination of arbitrability.[92] Plaintiffs also point to a Second Circuit decision upholding the grant of a preliminary injunction enjoining further arbitration proceedings while the arbitrability of the dispute was being litigated.[93] Plaintiffs assert that they must demonstrate the following in order to show they are entitled to a preliminary injunction: 1) a substantial likelihood that Plaintiffs will prevail on the merits; 2) a substantial threat that Plaintiffs will suffer irreparable injury if the injunction is not granted; 3) Plaintiffs' threatened injury outweighs the threatened harm to Defendant VT Halter; and 4) granting the preliminary injunction will not disserve the public interest.[94]

Plaintiffs argue that they meet all four requirements for a preliminary injunction. Plaintiffs argue that they have demonstrated through "this pleading and a plethora of prior pleadings" that they will succeed on the merits.[95] Plaintiffs further assert that the Eighth Circuit and Southern District of Texas have recognized that forcing a party to arbitrate an issue he never agreed to arbitrate constitutes irreparable injury.[96] Plaintiffs argue that the threatened harm to them outweighs Defendant VT Halter's threatened injury, because the only harm that could come to Defendant VT Halter if a preliminary injunction was granted is that it would have to wait for a

---

[92] *Id.* at 7.

[93] *Id.* (citing *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30 (2d Cir. 2010)).

[94] *Id.* (citing *Koman*, 2010 WL 3717312, at *8 (quoting *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009)).

[95] *Id.* at 8.

[96] *Id.* (citing *McLaughlin*, 105 F.3d at 1194; *Koman,* 2010 WL 3717312, at *3)).

judicial determination of arbitrability.[97]  Finally, Plaintiffs argue that there is a strong public policy against holding a party to a contract to which he or she did not agree, so the public interest weighs in their favor.[98]

In Plaintiffs' final argument in support of their motion to stay arbitration, Plaintiffs argue that the fact that non-parties to the arbitration agreement are part of this litigation weighs in favor of a stay or injunction of the arbitration proceeding.[99]  Plaintiffs note that Defendants Cajun Process and Flowline are non-signatories to the arbitration provision and thus cannot be forced to arbitrate.[100]  In the interest of judicial economy, Plaintiffs argue, the Court should retain jurisdiction over all of the claims involved in this dispute to avoid inconsistent judgments.[101] Alternatively, Plaintiffs argue, if the Court requires Plaintiffs and Defendant VT Halter to arbitrate, arbitration should be stayed or enjoined until the non-arbitrable claims against non-signatory Defendants have been decided by the Court.[102]

## 2. Defendant VT Halter's Arguments in Opposition to the Motion to Stay

In its opposition, Defendant VT Halter asserts that the pending arbitration proceeding does not encompass the claims that Plaintiffs have asserted against Defendant VT Halter, but rather only encompasses Defendant VT Halter's claims against Plaintiffs.[103]  Defendant VT Halter

---

[97] *Id.*

[98] *Id.* (citing *Koman,* 2010 WL 3717312, at *10 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995)).

[99] *Id.* at 9.

[100] *Id.*

[101]*Id.*

[102] *Id.* at 10.

[103] Rec. Doc. 72 at 1.

emphasizes that the only claims subject to the pending arbitration proceeding are Defendant VT Halter's claims of payment breach and damages resulting from Plaintiffs' improper assertion of warranty rights against Defendant VT Halter.[104] These claims, Defendant VT Halter argues, are separate and distinct from the "technical dispute" regarding the defectiveness of the valves, undoubtedly arise out of the contract, and are the only claims pending in the arbitration proceeding.[105] At no point, Defendant VT Halter argues, have Plaintiffs contested the arbitrability of Defendant VT Halter's claims against Plaintiffs.[106] Defendant VT Halter further notes that it informed Plaintiffs that it would not agree to an indefinite stay and specifically informed Plaintiffs that if the Court did not rule on the motion to compel arbitration by mid-October, Defendant VT Halter may have to reconsider moving forward with arbitration.[107]

Defendant VT Halter further argues that the parties mutually agreed to the incorporation of a "broad, plainly worded, unambiguous arbitration clause" in the contract and that there is a strong presumption favoring arbitration.[108] Moreover, Defendant VT Halter argues, the incorporation of the AAA rules serves as clear and unmistakable evidence of the parties' intent to submit the threshold question of arbitrability to arbitration.[109] Defendant VT Halter argues that the Plaintiffs cite only one case, *Oil, Chemical and Atomic Workers' Intern. Union, Local 4-447 v. Chevron Chemical Co.*, to support its argument that the Court is the proper party to determine

---

[104] *Id.* at 5.

[105] *Id.*

[106] *Id.*

[107] *Id.* at 7.

[108] *Id.* at 8–9.

[109] *Id.* at 10.

the threshold arbitrability inquiry.[110] According to Defendant, that case is inapplicable here because the parties in that case did not explicitly agree to have questions of arbitrability decided by the arbitration panel thorugh the incorporation of AAA or similar rules.[111]

Finally, Defendant VT Halter argues that the arbitration panel, not this Court, has jurisdiction to adjudicate Plaintiff's present claim for injunctive relief and that under Fifth Circuit precedent, Plaintiffs do not meet the requirements for a preliminary injunction.[112] Instead, Defendant VT Halter argues, the Court should grant Defendant VT Halter's request to stay all claims made by Plaintiffs against Defendant VT Halter pending arbitration, because Section 3 of the FAA provides for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement.[113] Because, Defendant VT Halter argues, there is a written agreement to arbitrate and Plaintiffs' allegations fall within reach of that agreement, the Court should issue a stay of Plaintiffs' claims.[114]

### III. Law and Analysis

**A.    Whether the Federal Arbitration Act Applies to this Dispute**

In *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, the United States Court of Appeals for the Fifth Circuit explained that the FAA was "in large part motivated by the goal of eliminating the courts' historic hostility to arbitration agreements."[115] Thus, "Section 2 of the FAA puts

---

[110] *Id.* at 12 (citing 815 F.2d 338, 340 (5th Cir. 1987)).

[111] *Id.*

[112] *Id.* at 13 (citing *Bluefield*, 577 F.3d at 252-53).

[113] *Id.* at 15.

[114] *Id.*

[115] 379 F.3d 159, 166 (5th Cir. 2004) (citations omitted).

arbitration agreements on the same footing as other contracts."[116] This means that, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[117]

In resolving the motion presently before the Court, it is first necessary to determine whether the action falls within the scope of the FAA. On this point, the FAA, as codified at 9 U.S.C. §§ 1–2, provides the basis for the Court's inquiry. Section 2 states that:

> **A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction**, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, **shall be valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract.[118]

Section 1 defines "commerce" as meaning "commerce among the several States or with foreign nations."[119] In *Perry v. Thomas*, the United States Supreme Court concluded that the FAA "provide[s] for the enforcement of arbitration agreements within the full reach of the Commerce Clause [of the United States Constitution]."[120]

The FAA, as codified at 9 U.S.C. § 3, gives federal courts authority to stay litigation pending arbitration; it provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, **the court in which such suit is pending, upon being satisfied that**

---

[116] *Id.*

[117] *Id.*

[118] 9 U.S.C. § 2 (emphasis added).

[119] 9 U.S.C. § 1.

[120] 482 U.S. 483, 490 (1987). In *Perry*, the Supreme Court held that § 2 of the FAA preempted a California statute that provided a judicial forum for actions seeking to collect wages, notwithstanding any arbitration agreement between the parties. *Id.* at 484, 492.

> **the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action** until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.[121]

As the United States Court of Appeals for the Fifth Circuit has observed, Section 3 of the FAA is mandatory, providing that federal courts "*shall* on application of one of the parties stay the trial of the action."[122]

Section 4 of the FAA covers motions to compel arbitration; it provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.[123]

In this case, the parties agree that the contract includes an arbitration clause.[124] Plaintiffs nevertheless contend that the FAA does not apply to this particular dispute because of the failure to appoint an ABS surveyor. However, Plaintiffs have failed to identify any language from the contract that suggests the FAA no longer applies if an ABS surveyor is not appointed. Even assuming, as Plaintiffs argue, that the arbitration clause was never triggered because of the failure to meet a condition precedent, it does not follow that the FAA ceases to apply to the contract.

---

[121] 9 U.S.C. § 3 (emphasis added).

[122] *Waste Mgmt, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 342–43, 346 (5th Cir. 2004) (construing 9 U.S.C. § 3, reasoning that "[t]he grammatical structure of this sentence would seem to make clear that any of the parties to the suit can apply to the court for a mandatory stay, and the court must grant the stay if the claim at issue is indeed covered by the arbitration agreement," and ordering the district court to grant a nonsignatory's motion to compel arbitration).

[123] 9 U.S.C. § 4.

[124] *See* Rec. Doc. 33 at 4–5; Rec. Doc. 24-1 at 2.

Defendant VT Halter and Plaintiffs agree that the contract contained a "written provision . . . to settle by arbitration," even if Plaintiffs dispute whether the arbitration clause was triggered. The FAA applies to contracts evidencing a transaction involving commerce. Plaintiffs and Defendant VT Halter are citizens of different states, and thus engaged in a transaction involving interstate commerce.[125] Accordingly, the Court concludes that the contract falls within the scope of the FAA.

**B.      Enforceability of the Arbitration Clause**

The Supreme Court has made clear that there is a strong presumption in favor of arbitrability,[126] and thus, any doubts about the arbitrability of a dispute should be resolved in favor of arbitration.[127] To overcome this presumption, there must be clear evidence that the parties did not intend the claim to be arbitrable.[128] The Fifth Circuit has established a two-step inquiry to determine if an arbitration clause is enforceable.[129] First, a court determines whether the parties agreed to arbitrate.[130] This involves determining both whether there was a valid agreement to arbitrate and whether the dispute in question falls within the scope of the arbitration clause.[131] Second, a court determines whether any legal constraints external to the agreement foreclose the

---

[125] *Atl. Aviation, Inc. v. EBM Grp., Inc.*, 11 F.3d 1276, 1280 (5th Cir. 1994).

[126] *See E.E.O.C. v. Waffle House*, 534 U.S. 279, 289 (2002).

[127] *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

[128] *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000).

[129] *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

[130] *Id.*

[131] *Id.*

21

arbitration of claims.[132]

The FAA provides that a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[133] Section 2 of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."[134] "[T]he strong federal policy favoring arbitration preempts state laws that act to limit the availability of arbitration."[135] More specifically, "the FAA will preempt any state laws that contradict the purpose of the FAA by requir[ing] a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."[136]

Here, the parties' February 13, 2013, contract contains the following arbitration provision:

### ARTICLE XVII - LAW APPLICABLE; DISPUTES; VENUE:

17.0 This Contract and any disputes arising hereunder shall be governed by the Laws of the State of New York, U.S.A. In the event of any dispute arising in connection with this Contract, the parties shall first attempt to amicably resolve the dispute through negotiations among the parties' respective executive level personnel.

17.1 With regard to any disputes of a technical nature ("Technical Disputes") regarding whether any part of the Work has been completed in accordance with the

---

[132] *Id.*

[133] 9 U.S.C. § 2.

[134] *Moses H. Cone*, 460 U.S. at 24.

[135] *Saturn Distrib. Corp. v. Paramount Saturn, Ltd.*, 326 F.3d 684, 687 (5th Cir. 2003) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)).

[136] *Davis v. EGL Eagle Global Logistics L.P.*, 243 F. App'x 39, 44 (5th Cir. 2007) (quotations and citations omitted).

applicable rules or regulations the parties agree that within five (5) days of such dispute, the parties will jointly appoint an ABS surveyor to decide the matter.

17.2 Failing amicable resolution of disputes other than Technical Disputes, or in the event that the ABS surveyor is unable to resolve the matter, the parties shall submit the matter in dispute to binding arbitration in the United States of America pursuant to the Commercial Arbitration Rules of the American Arbitration Association.[137]

As noted above, the parties agree that the contract includes an arbitration clause, and the parties do not argue that any external legal constraints foreclose the arbitration of the claims.[138] Instead, Plaintiffs argue that the arbitration clause does not apply to the instant dispute, because neither party ever appointed an ABS surveyor within five days of the dispute to decide the matter.[139] The "intent of the arbitration provision" in the contract did not apply to technical disputes like this one, Plaintiffs assert, "unless the condition precedent of the joint appointment of an ABS surveyor by both parties was met."[140] Plaintiffs further contend that, under federal and New York law, questions of arbitrability are for the Court to decide, not the arbitrator.[141] Defendant VT Halter contends that technical disputes fall within the broad scope of the valid arbitration agreement between the parties, even if no ABS surveyor was ever appointed.[142] Defendant further argues that because the parties incorporated the AAA rules, the determination

---

[137] Rec. Doc. 33 at 5; Rec. Doc. 24-1 at 5.

[138] *See* Rec. Doc. 33 at 4–5; Rec. Doc. 24-1 at 2.

[139] Rec. Doc. 33 at 4.

[140] Rec. Doc. 39 at 2.

[141] *Id.* at 7 (citing *Smith Barney Shearson, Inc. v. Sacharow*, 689 N.E.2d 884 (N.Y. 1997); *Nationwide Gen. Ins. Co. v. Inv'rs Ins. Co.*, 332 N.E.2d 333 (N.Y. 1975); *Legislature of Cty. of Rensselaer v. Allen*, 353 N.Y.S.2d 554 (App. Div. 1974)).

[142] Rec. Doc. 24-1 at 2.

of arbitrability must be left to the arbitration panel, not the Court.[143]

Here, Plaintiffs confuse the question of which body decides questions of arbitrability with the question of arbitrability itself. Plaintiffs rely on a New York case, *Smith Barney Shearson, Inc. v. Sacharow*,[144] for the proposition that questions of arbitrability are for the judiciary to decide. Although *Smith Barney Shearson* held that "the question of arbitrability is an issue generally for judicial determination in the first instance," the court also recognized that an "important legal and practical exception has evolved which recognizes, respects and enforces a commitment by the parties, nevertheless, to arbitrate even that issue when they clearly and unmistakably so provide."[145] Here, the parties' incorporation into the contract of the AAA rules, which require the arbitrator to make determinations of arbitrability, clearly and unmistakably evidences the intent of the parties to arbitrate the issue of arbitrability.

Plaintiffs' reliance on *Oil, Chemical and Atomic Workers' Intern. Union, Local 4-4447 v. Chevron Chemical Co.*[146] for the argument that the Court is the proper body to determine whether the parties agreed to arbitrate this particular dispute is similarly unavailing. In *Chevron Chemical Co.*, the parties agreed that the substance of a party's grievance was arbitrable but nevertheless disputed the arbitrability of the dispute due to concerns regarding the timeliness of the request for arbitration.[147] In upholding the lower court's determination that the parties had agreed to arbitrate

---

[143] *Id.* at 8 (citing AAA Rule 7(a), which states that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.")

[144] 91 N.Y.2d 39, 689 N.E.2d 884 (1997).

[145] *Id.* at 45–46 (internal citations and quotation marks omitted).

[146] 815 F.2d 338 (5th Cir. 1987).

[147] *Id.* at 339.

the grievance at issue, the Fifth Circuit noted that the courts must determine which issues the parties agreed to arbitrate.[148] The Fifth Circuit went on to distinguish between "substantive and procedural arbitrability."[149] Once a court determines that the parties are obligated to submit the subject matter of a dispute to arbitration, the Fifth Circuit held, "procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."[150] The Fifth Circuit concluded that "questions of timeliness are ones of procedural, not substantive, arbitrability" and thus, "should be decided by an arbitrator if the underlying substantive claim is arbitrable."[151] The Fifth Circuit further concluded that there could be a "rare" exception to this rule where it could "confidently be said not only that a claim was strictly procedural . . . but also that it should operate to bar arbitration altogether . . . ."[152]

Here, the parties agree that the underlying substantive claim, *i.e.* whether the valves were defective, is an arbitrable issue. Plaintiffs nevertheless argue that the arbitration agreement does not apply to the instant dispute because of the parties' failure to timely appoint an ABS surveyor to attempt to resolve the dispute.[153] The failure to appoint an ABS survey within five days of the dispute is an issue of timeliness and thus a question of procedural arbitrability for the arbitrator, not the Court, to determine. Moreover, the relevant language in the parties' contract states that "in

---

[148] *Id.* at 340.

[149] *Id.*

[150] *Id.* (citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557 (1964)) (internal quotations omitted).

[151] *Id.* at 341 (citing *Local No. 406, Int'l Union of Operating Engineers, AFL-CIO v. Austin Co.*, 748 F.2d 1262, 1264 (5th Cir. 1986)).

[152] *Id.* (citing *John Wiley*, 376 U.S. at 557–58).

[153] Rec. Doc. 39.

the event that the ABS surveyor is unable to resolve the matter, the parties shall submit the matter in dispute to binding arbitration."[154] It cannot be "confidently" said that the language of the contract suggests that the failure to timely appoint an ABS surveyor operates as a bar to arbitration altogether; thus, the "rare" exception recognized by the Fifth Circuit in *Chevron Chemical Co.* does not apply here.[155]

There is a strong presumption in favor of arbitrability,[156] and the party resisting arbitration bears the burden of proving that a dispute is not arbitrable.[157] To overcome the presumption in favor of arbitrability, there must be clear evidence that the parties did not intend the claim to be arbitrated.[158] Here, Plaintiffs have not met their burden to prove that the instant dispute is not arbitrable, because they have not presented clear evidence that the parties did not intend their claim to be arbitrated. Although Plaintiffs have asserted that the hiring of an ABS surveyor within five days of a dispute acts as a condition precedent to arbitration, a more plausible reading of the plain language of the contract is that failing resolution of a technical dispute by an ABS surveyor, the parties are to submit the dispute to binding arbitration. Even if the parties' conflicting interpretations of the contract were equally plausible, the dispute must still be submitted to arbitration, because the Fifth Circuit has instructed that any doubts about the arbitrability of a dispute should be resolved in favor of arbitration.[159]

---

[154] Rec. Doc. 33 at 5.

[155] 815 F.3d at 341.

[156] *See Waffle House*, 534 U.S. at 289.

[157] *See Am. Heritage Life Ins. Co.*, 321 F.3d at 539.

[158] *See Moses H. Cone*, 460 U.S. at 24–25.

[159] *Fleetwood Enters.*, 280 F.3d at 1073.

## IV. Conclusion

Here, the parties entered into a valid agreement to arbitrate the instant dispute. The Court concludes that the parties' agreement falls within the scope of the FAA and that the arbitration clause in the contract is enforceable under the FAA.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant VT Halter's "Motion to Compel Arbitration"[160] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' "Motion to Stay Arbitration"[161] is **DENIED AS MOOT.**

**NEW ORLEANS, LOUISIANA**, this __20th__ day of October, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[160] Rec. Doc. 24.

[161] Rec. Doc. 67