**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BOUCHARD TRANSPORTATION COMPANY, INC., et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-11264**<br>**c/w 16-12823** |
| **VT HALTER MARINE, INC.** | **SECTION: "G" (2)** |

## <u>ORDER</u>

In this litigation, Plaintiffs Bouchard Transportation Co., Inc., M/V Donna J. Bouchard Corp., B. No. 272 Corp., M/V Kim M. Bouchard Corp., and B. No. 270 Corp. (collectively, "Plaintiffs") allege that Defendant VT Halter Marine, Inc. ("Defendant") breached a contract between the parties when it installed "re-conditioned and malfunctioning valves," instead of new valves, onboard two vessels.[1] Plaintiffs further allege that Defendant purchased the faulty valves from Cajun Process Solutions, LLC and Flowline Valve and Controls, LLC.[2] Before the Court is Defendant's "Motion for Sanctions Pursuant to Fed. R. Civ. P. 11."[3] Defendant contends that the current suit is part of a pattern of frivolous lawsuits filed by Plaintiffs and Plaintiffs' counsel Marc Hebert.[4] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny the motion.

---

[1] Rec. Doc. 33 at 3.

[2] *Id.*

[3] Rec. Doc. 14.

[4] *Id.* at 1.

# I.  Background

## A.      *Factual Background*

In their complaint, Plaintiffs allege that they entered into a contract with Defendant VT Halter on February 13, 2013, requiring Defendant to build two tug and barge units in exchange for monetary compensation.[5] Plaintiffs allege that Defendant breached the contract by installing reconditioned and faulty valves on each barge even though the contract required that new valves be installed in the barges.[6] Specifically, Plaintiffs allege that in June of 2016, they experienced problems on both barges caused by the faulty valves.[7] As soon as the problems began, Plaintiffs allege that they notified Defendant and gave it an opportunity to repair the problem, but according to Plaintiffs, it failed to do so.[8] Plaintiffs assert that as a result of the defective conditions caused by the faulty valves, both barges have been rendered unsuitable for their intended use, and Plaintiffs claim over $20 million in damages.[9]

## B.      *Procedural Background*

Plaintiffs filed a complaint in this matter on June 22, 2016.[10] On July 6, 2016, the Court granted Plaintiffs leave to amend their complaint to expressly state the citizenship of Defendant.[11] On July 19, 2016, Plaintiffs submitted a motion to the magistrate judge for leave to file a third

---

[5] Rec. Doc. 33 at 3.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 4.

[9] *Id.*

[10] Rec. Doc. 1.

[11] Rec. Doc. 8.

amended and supplemental complaint for declaratory relief regarding the issue of arbitrability and damages,[12] which the magistrate judge granted on August 3, 2016.[13] On July 24, 2016, Defendant filed a motion to compel arbitration,[14] which the Court granted on October 20, 2016.[15] On November 23, 2016, the Court granted Flow Line Valve and Controls, LLC's[16] and Defendant Cajun Process Solutions, LLC's[17] unopposed motions to consolidate the instant suit with a related action brought by Defendant claiming that the valves at issue were defective.[18]

On July 16, 2016, Defendant filed the instant motion for sanctions.[19] On July 26, 2016, Plaintiffs filed an opposition to the motion for sanctions.[20] With leave of the Court, Defendant filed a reply on August 2, 2016.[21] On August 3, 2016, Plaintiffs filed a sur-reply with leave of the Court in further opposition to the motion.[22]

---

[12] Rec. Doc. 19.

[13] Rec. Doc. 32.

[14] Rec. Doc. 24.

[15] Rec. Doc. 74.

[16] Rec. Doc. 75.

[17] Rec. Doc. 76.

[18] Rec. Doc. 77.

[19] Rec. Doc. 14.

[20] Rec. Doc. 22.

[21] Rec. Doc. 28.

[22] Rec. Docs. 36.

## II. Parties' Arguments

### A.   *Defendant's Arguments in Support of Sanctions*

In its motion, Defendant argues that the Court should order sanctions against Plaintiffs, because Plaintiffs brought a prior action and the instant action "with full knowledge that the subject contract contains an arbitration agreement that divests the Court of jurisdiction over disputes relating to the Contract."[23] According to Defendant, responding to Plaintiffs' "frivolous court filings" has been costly.[24] Defendant contends that Plaintiffs filed a lawsuit prior to the instant litigation which they voluntarily dismissed after Defendant filed a motion to compel arbitration.[25] Therefore, Defendant argues, Plaintiffs should have known that they were forced to arbitrate any breach of the contract and should not have filed the instant cause of action.[26] Defendant contends that "an improper purpose may be inferred from the filing of frivolous papers" and that Plaintiffs' "bullying tactics" are exactly the types of abuses Rule 11(b)(1) was intended to prevent.[27]

### B.   *Plaintiffs' Arguments in Opposition*

In opposition, Plaintiffs argue that sanctions are not warranted in this case, because Plaintiffs' claims and request for declaratory judgment are supported by the contract between the parties, applicable case law, and the facts of the case.[28] Plaintiffs assert that the prior lawsuit filed against Defendant is irrelevant to this litigation because the parties reached a settlement in that

---

[23] Rec. Doc. 14-1 at 1.

[24] *Id.* at 2.

[25] *Id*. at 5.

[26] *Id.*

[27] *Id.* at 6.

[28] Rec. Doc. 22 at 6.

case and the issue of arbitrability was never adjudicated.[29] Plaintiffs further assert that the arbitration clause may be limited in its application to technical disputes but that Defendant has filed a motion for sanctions without even acknowledging this issue.[30] Plaintiffs request that Defendant's motion be denied and that the Court award costs to Plaintiffs incurred in opposing Defendant's motion for sanctions.[31]

## C.    *Defendant's Reply in Further Support of Sanctions*

In its reply, Defendant argues that Plaintiffs filed frivolous suits and failed to make a sufficient inquiry into both the facts and the law before filing the instant litigation.[32] Defendant further asserts that Plaintiffs intentionally misrepresent existing law, which according to Defendant, instructs that where parties have incorporated the AAA rules into their arbitration agreement, questions of arbitrability are to be submitted to arbitration.[33] Defendant claims that Plaintiffs were not acting in good faith in filing their complaint, because the Fifth Circuit and courts of "many other circuits" have confirmed that the general rule that courts decide arbitrability does not apply where, as here, the parties "clearly and unmistakably provide otherwise."[34]

---

[29] *Id.* at 11.

[30] *Id.* at 13.

[31] *Id.*

[32] Rec. Doc. 28 at 7 (citing *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir. 1988)).

[33] *Id.*

[34] *Id.* at 8–9 (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

### D.    *Plaintiffs' Sur-Reply in Further Opposition to Sanctions*

In their sur-reply in further opposition to sanctions, Plaintiffs argue that the instant dispute is not arbitrable because the express condition precedent to arbitration was not met.[35] Plaintiffs assert that they gave Defendant timely notice of the technical dispute but that neither party appointed an ABS surveyor as contemplated by the contract at issue.[36] According to Plaintiffs, the issue of arbitrability was never reached in the first lawsuit filed against Defendant.[37] Moreover, Plaintiffs contend that they have the right, and Plaintiffs' counsel the obligation, to raise the issue of the enforceability of the arbitration clause in this proceeding.[38] Finally, Plaintiffs argue that Defendant does not cite to any provision in the contract at issue where the parties clearly and unmistakably provide that arbitrability should be decided by the arbitrator.[39] Therefore, Plaintiffs contend that the general rule that courts decide arbitrability remains in effect.[40] Plaintiffs argue that Defendant may disagree with Plaintiffs' approach to its claim but that such disagreement does not constitute a basis for the imposition of sanctions.[41]

---

[35] Rec. Doc. 36 at 2.

[36] *Id.* at 3.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 4.

[40] *Id.* at 5

[41] *Id.*

## III. Law and Analysis

**A.**     ***Legal Standard for Sanctions under Federal Rule of Civil Procedure 11***

As the Fifth Circuit has held, Federal Rule of Civil Procedure 11(b) provides in pertinent

part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; [and]
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .[42]

Rule 11 continues that, "[i]f, after notice and a reasonable opportunity to respond, the court

determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any

attorney, law firm, or party that violated the rule or is responsible for the violation."[43] "Subparts

(b)(1) and (2) of Rule 11 provide independent bases for sanctions."[44] Therefore, under Rule 11,

each of the two obligations mentioned above must be satisfied; "violation of either justifies

sanctions."[45] Stated otherwise, an attorney "violates Rule 11 if he fails to conduct a reasonable

---

[42] *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 802 (5th Cir. 2003) (en banc) (emphasis omitted).

[43] Fed. R. Civ. P. 11(c)(1).

[44] *Whitehead*, 332 F.3d at 802.

[45] *Id.*

inquiry into the law and facts underlying his motion, or if he makes a motion to delay, harass or increase the costs of litigation."[46]

"In determining compliance *vel non* with each obligation, the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances."[47] "An attorney's good faith is . . . [not] enough to protect him from Rule 11 sanctions."[48] Finally, "[c]ompliance with an attorney's affirmative duties"—whether it be establishing a sufficient legal basis or eschewing an improper motive—"is measured as of the time that the document is signed."[49]

"In deciding whether a reasonable inquiry into the law has been made a district court may consider how much time the attorney had to prepare the document; whether the document contains a plausible view of the law; whether the document is filed by an attorney or a *pro se* litigant; and the complexity of the legal and factual issues in question."[50]

Likewise, in deciding whether a filing was made for an improper purpose, a court is to determine whether "it is objectively ascertainable that an attorney submitted a paper to the court for an improper purpose."[51] Because of the objective inquiry, a district court can read an improper

---

[46] *Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999).

[47] *Whitehead*, 332 F.3d at 802 (citations and internal quotation marks omitted); *see also Thomas v. Capital Sec. Servs., Inc.*, 812 F.2d 984, 988 (5th Cir. 1987) ("Rule 11 compliance is measured generally by an objective standard of attorney performance.").

[48] *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994).

[49] *Id.*

[50] *Thomas*, 812 F.2d at 988.

[51] *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 580 (5th Cir. 2008).

motive into a document well-grounded in fact and law under exceptional circumstances.[52] The key is whether "the improper purpose is objectively ascertainable."[53] A district court's decision regarding Rule 11 sanctions is reviewed for abuse of discretion.[54]

### B.    *Whether Sanctions are Warranted against Plaintiffs for Violating Rule 11*

In its motion, Defendant argues that sanctions are warranted against Plaintiffs and their counsel, because Plaintiffs claims are frivolous and are filed for an improper purpose.[55] The Court will address Defendant's arguments in turn.

### 1.    **Whether Plaintiffs' Claims are Sufficiently Grounded in Law**

Plaintiffs allege a breach of contract claim against Defendant and seek declaratory judgment that the dispute at issue is "a technical dispute" as defined by the contract and is therefore exempt from arbitration under the plain language of the contract.[56] According to Defendant, Plaintiffs' suit is frivolous, because Plaintiffs knew or should have known that the litigation was precluded by the parties' agreement to arbitrate any contractual disputes.[57] Defendant further contends that Plaintiffs should have sought resolution of any contractual dispute through a private arbitration action.[58] Plaintiffs respond that the plain language of the contract suggests that the arbitration provision does not extend to technical disputes and that under New York law, which

---

[52] *Id.*

[53] *Id.* at 580–81.

[54] *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.3d 866, 872 (5th Cir. 1988).

[55] *See* Rec. Doc. 14 at 1.

[56] Rec. Doc. 33 at 7.

[57] *See* Rec. Doc. 14-1 at 6.

[58] *Id.*

Plaintiff contends applies to the contract, district courts and not arbitrators decide whether the parties agreed to arbitrate.[59] Therefore, Plaintiffs argue, the instant suit is sufficiently grounded in law, and sanctions are not appropriate.[60]

Here, the parties' February 13, 2013, contract contains the following arbitration provision:

### ARTICLE XVII - LAW APPLICABLE; DISPUTES; VENUE:

17.0 This Contract and any disputes arising hereunder shall be governed by the Laws of the State of New York, U.S.A. In the event of any dispute arising in connection with this Contract, the parties shall first attempt to amicably resolve the dispute through negotiations among the parties' respective executive level personnel.

17.1 With regard to any disputes of a technical nature ("Technical Disputes") regarding whether any part of the Work has been completed in accordance with the applicable rules or regulations the parties agree that within five (5) days of such dispute, the parties will jointly appoint an ABS surveyor to decide the matter.

17.2 Failing amicable resolution of disputes other than Technical Disputes, or in the event that the ABS surveyor is unable to resolve the matter, the parties shall submit the matter in dispute to binding arbitration in the United States of America pursuant to the Commercial Arbitration Rules of the American Arbitration Association.[61]

Plaintiffs argue that the arbitration clause does not apply to the instant dispute, because neither party ever appointed an ABS surveyor within five days of the dispute to decide the matter.[62] The "intent of the arbitration provision" in the contract does not apply to technical disputes like this one, Plaintiffs assert, "unless the condition precedent of the joint appointment of an ABS

---

[59] Rec. Doc. 22 at 6.

[60] *Id.* at 13.

[61] *See* Rec. Doc. 33 at 5; Rec. Doc. 24-1 at 5.

[62] *See* Rec. Doc. 33 at 4.

surveyor by both parties was met."[63] Plaintiffs further contend that, under federal and New York law, questions of arbitrability are for the Court to decide, not the arbitrator.[64] Defendant VT Halter contends that technical disputes fall within the broad scope of the valid arbitration agreement between the parties, even if no ABS surveyor was ever appointed.[65] Defendant further argues that because the parties incorporated the AAA rules, the determination of arbitrability must be left to the arbitration panel, not the Court.[66]

On October 20, 2016, the Court granted Defendant's motion to compel arbitration and determined that Plaintiffs had not met their burden to demonstrate that the parties did not intend to arbitrate the underlying contractual dispute at issue in this litigation.[67] The Court disagreed with Plaintiffs' assertion that the hiring of an ABS surveyor within five days of a dispute acts as a condition precedent to arbitration and determined that "a more plausible reading of the plain language of the contract is that failing resolution of a technical dispute by an ABS surveyor, the parties are to submit to binding arbitration."[68] Although the Court ultimately disagreed with Plaintiff's interpretation of the contract at issue, it nevertheless appears that Plaintiff's complaint was sufficiently grounded in law and fact.

---

[63] Rec. Doc. 39 at 2.

[64] *Id.* at 7 (citing *Smith Barney Shearson, Inc. v. Sacharow*, 689 N.E.2d 884 (N.Y. 1997); *Nationwide Gen. Ins. Co. v. Inv'rs Ins. Co.*, 332 N.E.2d 333 (N.Y. 1975); *Legislature of Cty. of Rensselaer v. Allen*, 353 N.Y.S.2d 554 (App. Div. 1974)).

[65] Rec. Doc. 24-1 at 2.

[66] *Id.* at 8 (citing AAA Rule 7(a), which states that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.")

[67] Rec. Doc. 74 at 26.

[68] *Id.*

To overcome the presumption of arbitrability of a dispute, the Fifth Circuit has held that a party must present clear evidence that the parties did not intend a claim to be arbitrable.[69] Here, it appears that Plaintiffs conducted a reasonable inquiry into the relevant law and facts and attempted to present clear evidence that the parties did not intend the claim underlying the contractual dispute to be arbitrable.[70] The Court ultimately found Plaintiffs' evidence unavailing. However, it cannot be said that their interpretation of the contract at issue and Plaintiff's request for declaratory judgment were so misguided or frivolous as to support sanctions.[71] Thus, Defendants have failed to show that sanctions are warranted against Plaintiffs for bringing this litigation against Defendants.

## 2.      Whether Plaintiffs Brought the Action for an Improper Purpose

Even though the Court has found that Plaintiffs' complaint was sufficiently grounded in law, Plaintiffs can still be sanctioned if they filed this action for an improper purpose.[72] Despite Defendant's assertions to the contrary, there is no objective evidence that Plaintiffs filed this action for an improper purpose. Defendant does not dispute that the issue of arbitrability was not

---

[69] *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000).

[70] *See Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999) (holding that Rule 11 is violated when an attorney fails to conduct a reasonable inquiry into the law and facts underlying his motion, or if he makes a motion to delay, harass or increase the costs of litigation).

[71] *See Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992) ("To comply with his duties under rule 11, an attorney need not provide an absolute guarantee of the correctness of the legal theory advanced in the paper he files."). *See also Snow Ingredients, Inc. v. SnoWizard, Inc.*, No. 12-1412, 2014 WL 1329804, at *10 (E.D. La. March 28, 2014) (Brown, J.) (finding that plaintiff's RICO claims were not "so misguided as to support sanctions," even if ultimately defendant's alleged acts did not support a violation of RICO).

[72] *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 577 (5th Cir. 2008) ("[C]ourts may in rare circumstances sanction parties for pleadings . . . that, although having plausible legal theories based in fact, have an underlying improper purpose.").

12

adjudicated in the prior lawsuit brought by Plaintiffs against Defendant.[73] Rather, Defendant argues that the motion to compel arbitration that it filed in the first suit should have made Plaintiffs aware that the claims set forth in Plaintiffs' instant complaint were matters to be arbitrated, not litigated.[74] Defendant further argues that Plaintiffs' third amended complaint, which added a claim for declaratory relief regarding the issue of arbitrability, was filed in bad faith to "justify and maintain" their "abusive litigation."[75]

However, because Defendant has not presented objective evidence that Plaintiffs filed the instant litigation for an improper purpose, the Court may not infer bad faith simply because Plaintiffs took a view of the contractual language at issue that differs from that of Defendant. Put another way, Defendant has failed to demonstrate that this is one of the "*exceptional cases . . . where the improper purpose is objectively ascertainable*" and the Court may therefore read an ulterior motive into a complaint that is sufficiently grounded in law and fact.[76] The objective evidence here is insufficient to support a finding that Plaintiffs filed the instant litigation for an improper purpose.[77] Accordingly, Defendants' motion for sanctions on this ground must likewise fail.

---

[73] *See* Rec. Doc. 28 at 4.

[74] *Id.*

[75] *Id.*

[76] *See Maxxam, Inc.*, 523 F.3d at 580 (emphasis in original) (internal citation omitted).

[77] *See id. See also Snow Ingredients,* 2014 WL 1329804, at *10 (finding no improper purpose where defendant failed to provide objective evidence of improper motive in filing suit).

## V. Conclusion

The Court finds that Plaintiffs' complaint is sufficiently grounded in law and fact[78] and that the objective evidence is insufficient to support a finding that Plaintiffs filed the instant litigation for an improper purpose.[79] Therefore, the Court finds that sanctions are not warranted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's "Motion for Sanctions Pursuant to Fed. R. Civ. P. 11"[80] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ____1st____ day of February, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[78] *See* Fed. R. Civ. P. 11(b)(2); *Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999).

[79] *See* Fed. R. Civ. P. 11(b)(1); *Walker*, 168 F.3d at 241 (5th Cir. 1999).

[80] Rec. Doc. 14.